IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PUBLIC HEALTH EQUIPMENT & SUPPLY CO., INC., | § § § § | |
| Plaintiff, | § | |
| v. | § | (Claims dismissed June 5, 2009) |
| | § | |
| CLARKE MOSQUITO CONTROL PRODUCTS, INC., CLARKE ENVIRONMENTAL MOSQUITO MANAGEMENT, INC., CLARKE ENGINEERING TECHNOLOGIES, INC., | § § § § § § § | CIVIL ACTION NO. |
| Defendants. | § | SA-08-CV-0895 OG (NN) |
| ***************************************** | § | |
| CLARKE MOSQUITO CONTROL PRODUCTS, INC., CLARKE ENVIRONMENTAL MOSQUITO MANAGEMENT, INC., CLARKE ENGINEERING TECHNOLOGIES, INC., | § § § § § § § | |
| Counter-Plaintiffs, | § | |
| v. | § | (Pending counterclaim) |
| | § | |
| PUBLIC HEALTH EQUIPMENT & SUPPLY CO., INC., | § § § § | |
| Counter-Defendant. | § | |

## REPORT AND RECOMMENDATION

**TO:** Honorable Orlando Garcia
United States District Judge

This report and recommendation addresses two pending motions: (1) Public Health Equipment and Supply, Inc.,'s (Public Health) motion to amend its complaint,[1] and Clarke

---

[1] Docket entry # 34.

Mosquito Control Products, Inc.'s (Clarke) motion for summary judgment.[2] I have jurisdiction to issue this report and recommendation under 28 U.S.C. § 636(b) and the district judge's order of referral.[3] The resolution of a motion to amend a complaint ordinarily falls within a magistrate judge's jurisdiction, but Public Health's motion to amend is case-dispositive because granting the motion would revive dismissed claims. Because the nature of this case was set out in the dismissal order,[4] this report and recommendation includes only relevant background information.

**Public Health's motion to amend**. Previously, the district court dismissed Public Health's claims—breach of contract, tortious interference with business relationship and conspiracy—based on the lack of an enforceable contract.[5] Public Health seeks to amend its complaint to revive the dismissed claims by alleging facts to overcome the shortcomings discussed in the dismissal order.[6] This is the second time Public Health asked to amend its complaint. Public Health first asked to amend its complaint in its response[7] to Clarke's motion to dismiss—the motion resolved by the dismissal order.[8] The district court did not explicitly

---

[2] Docket entry # 33.

[3] Docket entry # 41.

[4] Docket entry # 29.

[5] Docket entry # 29, p. 8.

[6] Docket entry # 34, p. 3.

[7] Docket entry # 13, p. 8.

[8] Docket entry # 9.

address the request in the dismissal order. Public Health argues that a plaintiff should be given at least one chance to amend its petition before granting a motion to dismiss.[9]

Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings after a scheduling order has issued.[10] The rule still applies after the deadline set by the scheduling order has expired.[11] Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge."[12] "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[13] In determining whether the good-cause standard has been met, the court considers four factors: (1) the movant's explanation for the failure to timely move for leave to amend, (2) the importance of the amendment, (3) potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice.[14] Here, the factors weigh against allowing the amendment.

<u>Public Health's explanation for the failure to timely move for leave to amend</u>. Public Health maintains it should be permitted to amend its complaint to correct the deficiencies in its original complaint because the district court ruled on Clarke's motion to dismiss after the

---

[9] Docket entry # 34, p. 4.

[10] *S&W Enterprises v. SouthTrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003).

[11] *S&W Enterprises*, 315 F.3d at 535 (deciding that the rule applies after the deadline for amending pleadings has expired).

[12] FED. R. CIV. P. 16(b).

[13] *S&W Enterprises*, 315 F.3d at 535 (citation omitted).

[14] *S&W Enterprises*, 315 F.3d at 536.

deadline for amending pleadings passed.[15] This explanation might explain some delay in moving to amend a second time, but it does not explain an 87-day delay. The deadline for amending pleadings expired on March 23, 2009.[16] The district court granted Clarke's motion to dismiss on June 5, 2009.[17] Although the deadline for amending pleadings had passed when the district court dismissed Public Health's claims, Public Health was placed on notice about deficiencies in its complaint on January 16, 2009 when Clarke moved to dismiss Public Health's claims.[18] About Public Health's breach of contract claim, Clarke argued that Public Health's complaint failed to allege the existence of a written distributor agreement enforceable under the statute of frauds.[19] About the tortious interference claim, Clarke argued that the claim failed because the claim was not based on a valid, enforceable claim.[20] About the conspiracy claim, Clarke argued that the claim failed because the derivative tort was not based on a valid, enforceable contract.[21] Rather than address those deficiencies and propose an amended complaint, Public Health complained that Clarke's statute-of-frauds defense did not appear on the face of Public Health's

---

[15] Docket entry # 39, p. 1. Public Health also argued that its claims should decided on the merits rather than whether its state-court complaint met federal pleading standards, but Public Health was placed on notice that federal procedural rules applied when Clarke removed the case on October 31, 2008. Federal pleading standards were not the basis of the district court's dismissal order. Docket entry # 34, p. 2.

[16] Docket entry # 8, ¶ 3 (setting the deadline for amending pleadings as March 23, 2009).

[17] Docket entry # 29 (granting motion to dismiss and dismissing Public Health's claims).

[18] Docket entry # 9.

[19] Docket entry # 9, pp. 4-7.

[20] Docket entry # 9, pp. 7-9.

[21] Docket entry # 9, p. 10.

4

complaint—that is, Public Health had not alleged an oral distributor agreement.[22]  Public Health asked to amend its complaint if the district court determined the complaint was deficient,[23] but it did not proffer that an amendment would allege the existence of a written distributor agreement.

Nothing precluded Public Health from amending its complaint before the deadline for amending pleadings passed.  Public Health was placed on notice that it had failed to allege a written distributor agreement when Clarke filed the motion to dismiss on January 16, 2009.  Public Health knew its claims were dismissed on June 5, 2009.  Whether the delay in moving to amend resulted from over-sight or searching for documents evidencing a written agreement, the delay is unexplained.  Public Health's explanation for failing to timely move for leave to amend—*i.e.*, the district court dismissed its claims after the deadline to amend pleadings passed—weighs against the motion to amend.

The importance of the amendment.  The proposed amendment is not important because it does not correct deficiencies in the original complaint.  Rather than allege the existence of a contract satisfying the statute of frauds, the amended complaint relies on "correspondence, purchase orders, invoices, and other documents prepared and circulated by Clarke" that purportedly reflect the "exclusive distributorship agreement, including, but not limited to, shipping and payment terms, descriptions of the products purchased and distributed by Public Health, and the products to be purchased and distributed by Public Health."[24]  The proposed amended complaint states: "No single document sets out the terms of the exclusive distribution

---

[22] Docket entry # 13, p. 7.

[23] Docket entry # 13, p. 8.

[24] Docket entry # 34, exh. 1, ¶ 11.

5

agreement between Public Health and Clarke. Nonetheless, those terms are reflected in many documents."[25] The documents are attached to Public Health's proposed amended complaint.

"Whether an alleged agreement constitutes an enforceable contract is generally a question of law."[26]

> A contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. If the agreement upon which the plaintiff relies is so indefinite as to make it impossible for the court to determine the legal obligations and liabilities of the parties, it is not an enforceable contract.[27]

Public Health's characterization of the documents attached to the proposed amended complaint over-states the nature of the "correspondence, purchase orders, invoices, and other documents prepared and circulated by Clarke" because the writings are not sufficiently definite so that a court can understand the terms of the alleged agreement.

I located no authority specifying the requirements for an exclusive distributor agreement, but a leading Texas treatise suggests the following elements for an enforceable agreement: (1) the purpose of the agreement, (2) the names and addresses of the parties, (3) rights granted (for example, to purchase, inventory, and promote and resell seller's products), (4) description of covered products, (5) covered territory, (6) purchase requirements and price, (7) terms of sale (for example, who sets resell prices), (8) marketing, merchandising, sales, advertising, product warranty, order and shipment, financial policies, (9) use of seller's name, (10) terms of the agreement (for example, when the agreement takes effect), (11) provisions for termination of the

---

[25] Docket entry # 34, attach. 1 (proposed complaint), ¶ 11.

[26] *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas 2006, no pet.).

[27] *Searcy*, 201 S.W.3d at 322.

agreement, (12) obligations upon termination, (13) agreement about assignments, and (14) choice of law.[28] *Williston on Contracts* suggests similar requirements: (1) identification of parties,[29] (2) provision for exclusive dealing between the parties,[30] (3) provision that buyer only handle seller's goods,[31] (4) distributor's duties,[32] (5) assignment of territory,[33] (6) effective date and termination date,[34] and (7) obligations upon termination.[35]

The documents attached to the proposed amended complaint include few of the essential provisions. The submitted documents contain references to an exclusive distributor,[36]

---

[28] *See* Tex. Forms Legal & Bus., Commercial Code, ch. 36, §§ 36.118, 36.119 (Exclusive-Dealing Agreements), *available on* Westlaw.

[29] Williston on Contracts 4th Forms § 7F:29.

[30] *Id*. at §§ 7F:31.3 & 13F.57.

[31] *Id*. at § 13F.58.

[32] *Id*. at § 7F:30.

[33] *Id*. at §§ 7F:31.4 & 13F:60.

[34] *Id*. at § 7F:31.

[35] *Id*. at §§ 54F:131 & 54F:133.

[36] *See* exh. 2 to proposed amended complaint ("our master distributor in the southwest, including Texas, Oklahoma and New Mexico, for the 1998 season"); exh. 3("the exclusive distributors of [Dursban Uno ULV and 5% Skeeter Abate] in Mexico"); exh. 4 ( "full-time distributor"); exh. 5 ("your distribution region"); exh. 6("our distributor in this region"); exh. 7("key distributors"); exh. 8("our exclusive distributor in Texas"); exhs. 36-38("your local distributor"); exh. 41 ("authorized distributor"); exh. 42 ("exclusive distributor of our Mosquitomist line of products in Texas"); exh. 44-45("sole supplier of the Biomist and Duet for the State of Oklahoma"); exh. 46 ("sole authorized distributor for Pro-Mist machines, Data Master and Software in New Mexico"); exh. 76 ("our exclusive authorized representative for sales of . . . Moquitocida Dursban UNO ULV insecticide and Abate 5% slow release mosquito larvicide pellets", to terminate on Jan. 31, 2000).

notification of price increases for 2008,[37] price lists for various years,[38] invoices reflecting the shipment of Clarke's products,[39] and a map titled Clarke's distributor network,[40] but the documents do not allow the court to determine the relative obligations of the parties.  Texas law does not require a writing to contain all the material terms of an agreement to satisfy the statute of frauds, but "the writing [must] afford a basis for believing that the offered oral evidence rests on a real transaction."[41]  Even considering the documents together, "it impossible for the court to determine the legal obligations and liabilities of the parties."[42]  Because the court cannot determine Clarke or Public Health's legal obligations or liabilities, Public Health's allegations in the proposed amended complaint do not allege an enforceable contract.  Thus, the proposed alleged complaint cannot revive Public Health's claims.  The "importance of the amendment" consideration weighs against allowing the amendment.

Potential prejudice in allowing the amendment.  Allowing the amendment would prejudice Clarke by requiring it to file a second motion to dismiss and to bear the cost of a second motion to dismiss.  The prejudice to Public Health weighs against allowing the amendment.

---

[37] See exh. 8 to proposed amendment.

[38] Id. at exh. 9-17.

[39] Id. at exh. 18-35.

[40] Id. at exh. 50.

[41] Tex. Bus. & Comm. Code Ann. § 2.201, comment 1 (Vernon 2009).

[42] Searcy, 201 S.W.3d at 322.

<u>The availability of a continuance to cure such prejudice</u>. If the amendment were allowed, a continuance would be needed to cure prejudice to Public Health because the discovery deadline and dispositive motion deadlines have passed. The scheduling order deadlines have been reset once.[43] No apparent reason exists why the scheduling order could not be changed. The availability of a continuance does not weigh for or against allowing an amendment.

My analysis of the applicable factors shows that Public Health has not met the good-cause standard because: (1) Public Health did not timely file its motion for leave to amend, (2) the proposed amendment does not cure the deficiencies in the original complaint, and (3) allowing the amendment will prejudice Clarke. The district court should deny the motion to amend.

**Clarke's motion for summary judgment**. Clarke plead two counter-claims: breach of contract and an alternative claim for unjust enrichment.[44] Clarke moved for summary judgment on both claims.[45] The district court granted Public Health's motion for an extension of time to respond to Clarke's motion,[46] but Public Health did not respond. Clarke's summary-judgment evidence indicates that Public Health has no defense to Clarke's counter-claims.

Clarke's breach-of-contract claim is based on Public Health's failure to pay for mosquito-control products ordered in August and September 2008. Clarke maintains it is entitled to

---

[43] Docket entry # 27 & 29.

[44] Docket entry # 11.

[45] Docket entry # 33.

[46] Docket entry # 36 (unopposed motion for extension of time); # 37 (order granting motion and extending deadline for responding to Sept. 8, 2009).

summary judgment because Public Health ordered the products, Clarke delivered the products, and Public Health has not paid for the products.

The elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach."[47] Clarke presented summary-judgment evidence supporting each of these elements.[48] Public Health did not raise a fact question about the elements. Clarke is entitled to summary judgment on its breach-of-contract claim. The district court need not consider Clarke's unjust-enrichment claim because that claim is an alternative claim.[49]

**Recommendations**. For the reasons explained above, it is recommended that the district court (1) DENY Public Health's motion to amend (docket entry # 34) because Public Health did not meet the good-cause standard for amending a complaint after the deadline for amending pleadings, (2) GRANT Clarke's motion for summary judgment (docket entry # 33) because Clarke presented summary-judgment evidence proving the elements of its breach-of-contract counterclaim, and (3) ENTER SUMMARY JUDGMENT in favor of Clarke on its breach-of-

---

[47] *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App.—San Antonio 1998, pet. denied).

[48] Docket entry # 33, exh. A (affidavit of Mariann Cumbo, Clarke,'s accounts receivable and payable manager) (attesting that Public Health had not paid for products sold in Aug. & Sept. 2008); exh. B (deposition of Charles Mills Reeves, owner of Public Health) (acknowledging that Public Health had not paid for products ordered in Aug. & Sept. 2008); exhs. B1-B9 (Public Health purchase orders & Clarke invoices) (reflecting orders and deliveries of goods in the amount of $249,274.37); exh. B-10 (demand letter from Clarke) (demanding immediate payment of overdue account in the amount of $249,274.37); exh. B-12 (Clarke's balance sheet for purchases in Aug. & Sept. 2008) (showing Public Health owes Clarke $207,914.86).

[49] Docket entry # 11, ¶ 23 & # 33, ¶ 30.

contract counterclaim. If the district court accepts these recommendations, I will direct submission of updated evidence of damages,[50] pre-judgment interest, and attorneys fees for Clarke's breach-of-contract counterclaim, and submit a report and recommendation on damages.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[51] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[52] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar

---

[50] Because Public Health owner Charles Reeves testified in July 2009 that Public Health was paying the outstanding invoices at a rate of $750.00 per week, the summary-judgment evidence on damages is likely out-dated.

[51] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[52] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[53]

**SIGNED** on November 6, 2009.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[53] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).