IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PUBLIC HEALTH EQUIPMENT & SUPPLY CO., INC., | § § § | |
| Plaintiff, | § | |
| v. | § | (Claims dismissed June 5, 2009) |
| | § | |
| CLARKE MOSQUITO CONTROL PRODUCTS, INC., CLARKE ENVIRONMENTAL MOSQUITO MANAGEMENT, INC., CLARKE ENGINEERING TECHNOLOGIES, INC., | § § § § § § § | CIVIL ACTION NO. |
| Defendants. | § | SA-08-CV-0895 OG (NN) |
| ******************************** | § | |
| CLARKE MOSQUITO CONTROL PRODUCTS, INC., CLARKE ENVIRONMENTAL MOSQUITO MANAGEMENT, INC., CLARKE ENGINEERING TECHNOLOGIES, INC., | § § § § § § | |
| Counter-Plaintiffs, | § | |
| v. | § | (Pending counterclaim) |
| | § | |
| PUBLIC HEALTH EQUIPMENT & SUPPLY CO., INC., | § § § | |
| Counter-Defendant. | § | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

TO:     Honorable Orlando Garcia
         United States District Judge

This report and recommendation supplements the report and recommendation filed on November 6, 2009.[1] In that report, I recommended summary judgment in favor of Clarke Mosquito Control Products, Inc. (Clarke) on Clarke's breach-of-contract counterclaim. I advised, that if the district court accepted the recommendation, I would solicit updated evidence of damages, pre-judgment interest, and attorneys fees, and submit a supplemental report and recommendation. The district court accepted the recommendation and entered summary judgment in Clarke's favor.[2] This supplemental report and recommendation addresses the final issue in this case—Clarke's damages, pre-judgment interest, and attorneys fees.

**Procedural background**. I directed Clarke to file updated evidence on damages, pre-judgment interest, and attorneys fees for the breach-of-contract counterclaim, to include legal authorities and argument supporting an award.[3] Clarke's deadline to file its evidence, authorities and argument was December 29, 2009. I also set a deadline for Public Health Equipment & Supply Company (Public Health) to file any objections to Clarke's argument or legal authorities. Public Health's objections were due within seven calendar days of the date Clarke filed its evidence. Clarke complied with my order and filed its evidence, authorities and argument on December 29, 2009.[4] Public Health filed no objections. Because the deadline for objecting has passed, the issue of damages is ripe for determination. The following analysis relies on Texas law because this is a diversity case.

---

[1] Docket entry # 44.

[2] Docket entry # 47.

[3] Docket entry # 48.

[4] Docket entry # 49.

2

**Damages for breach of contract**. The Texas Business and Commerce Code provides for damages for breach of contract in the amount of the price of goods accepted.[5] "The normal measure of damages in a breach of contract case is the benefit-of-the-bargain measure. This measure seeks to restore the injured party to the economic position it would have been in had the contract been performed."[6]

Clarke submitted evidence showing that the unpaid amount of the price of goods accepted is $191,316.50. Clarke calculated this amount by subtracting Public Health's payments from the total price of products and equipment ordered by Public Health and shipped by Clarke. Clarke supported this calculation with an affidavit by its accounts receivable and accounts payable manager and copies its invoices.[7] In the affidavit, the affiant attested that Public Health ordered products and equipment in the amount of $211,680.16 and made payments in the amount of $20,363.66, leaving an unpaid balance of $191,316.50.[8] The district court can enter judgment in this amount assured the amount will not change because Clarke's attorney directed Clarke not to accept any more payments from Public Health until judgment is entered.[9]

---

[5]*See* Tex. Bus. & Com. Code Ann. § 2.709 (Vernon 2009) ("When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price . . . of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer. . . .").

[6]*SAVA Gumarska v. Advanced Polymer Sciences*, 128 S.W.3d 304, 317 (Tex. App.—Dallas 2004, no pet.).

[7]*See* docket entry # 49, exh. 1. Clarke provided Public Health's purchase orders with its motion for summary judgment. *See* docket entry # 33, exh. B, attachments to deposition.

[8]According to the affidavit, the amount includes a credit of $842.00.

[9]Docket entry # 49, p. 2, ¶ 7.

**Prejudgment interest**. Texas common law allows prejudgment interest to accrue at the same rate as postjudgment interest on damages awarded for breach of contract."[10] When an applicable interest rate is not specified in the breached contract, pre-judgment interest is calculated based on the statutory rate for postjudgment interest provided in section 304.003 of the Texas Finance Code.[11] That section sets the following interest rate:

> (1) the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation; [or]
> (2) five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System described by Subdivision (1) is less than five percent; . . .[12]

Because the prime rate is less than five percent, the applicable prejudgment interest rate is five per cent.[13] A five per cent interest rate translates to a daily interest rate of .0001369 per cent per day (5% divided by 365 days). At this daily rate, Clarke is entitled to prejudgment interest at a rate of $26.19 per day (.0001369% times $191,316.50) from the date it filed its counterclaim on January 23, 2009.[14]

---

[10]*Int'l Turbine Services v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002).

[11]*Tenn. Gas Pipeline Co. v. Technip USA Corp.*, No. 01-06-00535-CV, 2008 WL 3876141, at * 24 (Tex. App.—Houston [1 Dist.] Aug. 21, 2008).

[12]Tex. Fin. Code Ann. § 304.003(c) (Vernon 2006).

[13]To verify rates, *see* http://www.federalreserve.gov/Releases/H15/Current/; http://www.occc.state.tx.us/pages/int_rates/Index.html.

[14]*See* docket entry # 11.

Postjudgment interest. As set out in the language quoted above, the Texas Finance Code sets the rate for postjudgment interest. The applicable statutory rate is five per cent per year.[15]

**Attorney fees**. Texas law authorizes an award of "reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."[16] "The award of reasonable attorneys' fees is mandatory under [Texas law] if the plaintiff prevails in his or her breach of contract claim and recovers damages."[17] "It is presumed that the usual and customary attorney's fees . . . are reasonable."[18] Although the presumption may be rebutted,[19] it has not been rebutted in this case.

> The first step in determining statutorily authorized attorneys' fees is to calculate a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The court must then consider whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case and the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). A district court must "explain with a reasonable degree of specificity the findings and reasons upon which the award is based, including an indication of how each of the *Johnson* factors was applied."[20]

Clarke requested attorney's fees and expenses in the amount of $36,557.00.[21] Clarke

---

[15] *See* Tex. Fin. Code Ann. § 304.003(c)(2) (Vernon 2006) (setting postjudgment interest rate as "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System . . . is less than five percent).

[16] Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008).

[17] *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002).

[18] Tex. Civ. Prac. & Rem. Code Ann. § 38.003 (Vernon 2008).

[19] *See id*.

[20] *McClain v. Lufkin Industries*, 519 F.3d 264, 284 (5th Cir. 2008) (internal citations omitted).

[21] Docket entry # 49, p. 5.

5

supported this amount with affidavits from its attorneys explaining the calculation and copies of applicable billing statements.[22] The chart on page 3 of David Evans's affidavit and the exhibit to David J. Tecson's affidavit establishes the basis for the lodestar amount of $35,995.00. Clarke's bill of costs[23] reflects costs in the amount of $592.00, bringing the total Clarke requested to $36,557.00. Clarke's attorney thoroughly addressed each of the *Johnson* factors in his affidavit. Because the Fifth Circuit requires the district judge to indicate how each of the *Johnson* factors[24] applies, I have summarized the factors below.

<u>The time and labor required</u>. I reviewed the hours claimed for this case against my own knowledge, experience, and expertise of the time required to complete similar activities. The amount of time requested appears reasonable and necessary to complete similar activities. I observed no unnecessary duplication of effort among the attorneys working on this case. The time and labor reflected in Clarke's submission does require adjustment of the lodestar.

<u>The novelty and difficulty of the questions</u>. The issues in this case were neither novel nor particularly difficult. The time requested reflects an appropriate expenditure of time in research and preparation. The novelty and difficulty of the questions in this case do not require

---

[22]*Id*., exh. 2.

[23]Docket entry # 49, exh. D-2.

[24]The *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).

adjustment of the lodestar.

The skill requisite to perform the legal service properly. The attorney work product, preparation, and general ability before the court was sufficiently competent and appropriate. The skill requisite to perform the legal service properly does not require adjustment of the lodestar.

The preclusion of other employment. Prosecuting Clarke's counter-claim undoubtedly foreclosed otherwise available business and obligated Clarke's counsel to spend time on the client's behalf. However, the preclusion of other employment in this case was not such as to require adjustment of the lodestar.

Customary fee and attorney experience, reputation, and ability. The State Bar of Texas's Department of Research and Analysis has captured the customary fees for Texas in its "Hourly Rates in 2005 Report."[25] I compared the fees used in computing the requested amount with the customary fees for similar work in the San Antonio region. I also considered the vitae of the attorneys who worked on the case. The fees used in computing the requested amount are similar to the customary fees for attorneys with similar experience working in similar law firms in the San Antonio region so as to be considered reasonable. Consideration of customary fee and attorney experience, reputation, and ability does not require adjustment of the lodestar.

Whether the fee is fixed or contingent, the amount involved and the results obtained. The amount involved in the counterclaim was $211,680.16. The district court's order dated December 3, 2009 discussed the result of the counterclaim—summary judgment in favor of

---

[25]The report is available at http://www.texasbar.com/template.cfm?section=reports.

Clarke.[26] Clarke requested attorney fees based on time expended. Had it contracted for legal services on a 25% contingency fee basis, attorney fees would have totaled $52,920.04 — $16,925.04 more than the requested amount. Neither the nature of Clarke's fee arrangement with its counsel, the amount involved, or the results obtained require adjustment of the lodestar.

Time limitations imposed by the client or the circumstances and undesirability of the case. This case presented no particular time limitations or undesirability other than having to obtain legal representation to be paid for products ordered and shipped.[27] In this case, neither time limitations nor the undesirability of the case requires adjustment of the lodestar.

The nature and length of the professional relationship with the client. According to Clarke, it has had a long-term relationship with the Chicago lawyers who worked on this case. Clarke had no prior relationship with the San Antonio lawyers who worked on this case. In this case, the nature and length of the attorneys' professional relationship with Clarke does not bear on whether the lodestar should be adjusted.

Awards in similar cases. The requested amount is reasonable considered in light of awards made in similar litigation within and without this circuit. Consideration of awards in similar cases requires no adjustment of the lodestar.

**Recommendation**. I recommend: (1) a damages award in the amount of Public Health's unpaid balance of $191,316.50; (2) prejudgment interest at a rate of $26.19 per day beginning on January 23, 2009, (3) postjudgment interest at a rate of five per cent per year, and (4) an award of

---

[26]Docket entry # 47 (accepting the recommendation for summary judgment in favor of Clarke on the counterclaim).

[27]*See* docket entry # 49, exh. 2, ¶ 24 (stating that it seemed ridiculous that Clarke had to go through so much trouble simply to be paid what is owed).

attorney fees and costs in the amount of $36,557.00. Clarke also requested a conditional award of reasonable and necessary attorneys' fees incurred in the event of further litigation in this court or the court of appeals, but that request is not pleaded in the counterclaim. I recommend that request be denied.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[28] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[29] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-

---

[28] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[29] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

to proposed factual findings and legal conclusions accepted by the district court.³⁰

**SIGNED** on January 15, 2010.

*[signature]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

³⁰*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).